# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

RUSSELL L. HAMMONDS AND
ROBERT STEVE RODRIGUEZ,

     Plaintiffs,

v.                                                                  Civ. No. 16-1230 GBW/KRS

UNITED STATES OF AMERICA,

     Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on Defendant's Motion to Dismiss or in the Alternative for Summary Judgment. *Doc. 73*. Having reviewed the motion and attendant briefing (*docs. 77, 82*), having presided over oral argument on the matter (*doc. 86*), and being otherwise fully advised, the Court hereby GRANTS summary judgment to Defendant for the reasons described below.

## I.     BACKGROUND

This case stems from injuries suffered by Plaintiffs in the McGregor Range Complex, Range No. 39 on October 10, 2013. *Doc. 39* at 2-4. On October 8, 2015, each Plaintiff timely filed a separate administrative claim with the Department of the Army ("DOA"). *Id.* at 1. The DOA denied both claims by letter dated May 12, 2016. *Doc. 41* at 2. Plaintiffs filed suit in this Court on November 9, 2016. *Doc. 1*. Plaintiffs then filed an Amended Complaint on May 16, 2017. *Doc. 39*. Specifically, Plaintiffs brought (1)

claims against Defendant for negligence pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, (2) claims against Defendant for strict liability pursuant to the FTCA, and (3) claims against Defendant for violations of N.M.S.A. § 30-7-6 and N.M.S.A. § 74-4-1.[1] Defendant filed a Motion to Dismiss or in the Alternative for Summary Judgment on December 13, 2017. *Doc. 73.* In the Motion, Defendant seeks dismissal for lack of subject matter jurisdiction, arguing that the discretionary function exception to the FTCA applies in this case, and Defendant's sovereign immunity is therefore not waived as to Plaintiffs' claims. *Id.* at 8-10, 12-25. In the alternative, Defendant seeks summary judgment, arguing that the New Mexico wrongful conduct doctrine precludes Plaintiffs from recovering damages arising from their own illegal activities. *Id*. at 10-11, 25-27. The Motion was fully briefed on January 30, 2018. *Doc. 84.* The Court heard oral argument on the Motion on February 8, 2018. *Doc. 86.*

## II.  LEGAL STANDARDS

### A.  Motion to Dismiss under Rule 12(b)(1)

"A 12(b)(1) motion is the proper avenue to challenge the court's subject matter jurisdiction, and Rule 12(h)(3) requires that '(w)henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.'" *Barnson v. United States*, 531 F. Supp. 614, 617 (D. Utah 1982).

Motions under 12(b)(1) "generally take one of two forms: (1) a facial attack on the

---

[1] Plaintiffs have since abandoned all claims based on strict liability and violations of state statutes and regulations. *Doc. 86* at 1-2. Thus, Count I is the sole cause of action at issue in the instant motion.

sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002) (citations omitted). The Court understands the United States to be mounting a factual attack, because, as explained in more detail below, determining whether the discretionary function exception applies under the FTCA requires the Court to consider evidence outside the pleadings. *See Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995); *see also Berkovitz ex rel. Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

Accordingly, this Court shall review the face of the Amended Complaint and any relevant external materials to determine whether Plaintiffs have presented claims within the Court's jurisdiction, a necessary prerequisite for adjudication on the merits. Fed. R. Civ. P. 12(b)(1); *see also Fleming v. Gutierrez*, 785 F.3d 442, 444 (10th Cir. 2015) (holding that lack of subject matter jurisdiction precludes reaching the merits of a dispute). Notably, however, the Court must convert a 12(b)(1) motion to dismiss to a 12(b)(6) motion, or a motion for summary judgment, "if the jurisdictional question is intertwined with the merits of the case. Whether the discretionary-function exception applies is such a question." *Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1129 (10th Cir. 1999) (internal quotations, citations, and alteration omitted). Therefore, the Court approaches the present motion as a summary judgment motion under Rule 56.

### B. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Kidd v. Taos Ski Valley, Inc.*, 88 F.3d 848, 851 (10th Cir. 1996). The movant bears the initial burden of "show[ing] 'that there is an absence of evidence to support the nonmoving party's case.'" *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Once the movant meets this burden, the non-moving party is required to designate specific facts showing that "there are . . . genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex*, 477 U.S. at 324.

### C. The FTCA

The FTCA, 28 U.S.C. §§ 2671 *et seq.*, waives the United States' sovereign immunity for certain claims arising out of injuries caused by the negligence of governmental employees acting within the scope of their employment. 28 U.S.C. § 1346(b)(1). Under the FTCA, the United States can be held liable "in the same manner and to the same extent as a private individual under like circumstances," subject to certain exceptions. *Id.* §§ 2674, 2680(a). The two exceptions relevant here are the discretionary function exception and the private person analog.

## 1. Discretionary function exception.

The FTCA preserves the United States' sovereign immunity from claims based "upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). *See also Elder v. United States*, 312 F.3d 1172, 1176 (10th Cir. 2002). "Application of this exception is . . . a threshold issue[.]" *Johnson v. United States Dept' of Interior*, 949 F.2d 332, 335 (10th Cir. 1991). "If the discretionary function exception applies to the challenged governmental conduct, the United States retains its sovereign immunity and the district court lacks subject matter jurisdiction to hear the suit." *Domme v. United States*, 61 F.3d 787, 789 (10th Cir. 1995). Plaintiff must therefore show the absence of this exception as part of his overall burden to establish subject matter jurisdiction. *See Aragon v. United States*, 146 F.3d 819, 823 (10th Cir. 1998).

To determine whether the challenged conduct falls within the discretionary function exception, courts engage in a two-pronged analysis, known as the *Berkovitz* test, asking: (1) "whether the challenged conduct 'involves an element of judgment or choice,'" rather than involving application of "a federal statute, regulation, or policy that specifically prescribes a course of action for an employee to follow" and if so, (2) "whether that judgment is the kind that the discretionary function exception was designed to shield[.]" *Kiehn v. United States*, 984 F.2d 1100, 1102-03 (10th Cir. 1993)

(quoting *Berkovitz*, 486 U.S. at 536) (alteration omitted).  The second prong is animated by public policy concerns, but "[w]hen making the second inquiry, we are not to consider the subjective intent of the particular actor . . . .  Rather, we must consider whether the nature of the actions taken implicate public policy concerns, or are 'susceptible to policy analysis.'"  *Lopez v. United States*, 376 F.3d 1055, 1057 (10th Cir. 2004) (citing *Kiehn*, 984 F.2d at 1105).

### 2.  Private person analog.

"The FTCA does not itself create a substantive cause of action against the United States; rather, it provides a mechanism for bringing a state law tort action against the federal government in federal court.  Thus, the extent of the government's liability under the FTCA is determined by state law."  *Clark v. United States*, 234 F. Supp. 3d 1127, 1135 (D.N.M. 2014) (internal quotations and citations omitted), *aff'd*, 695 F. App'x 378, 2017 WL 2644635 (10th Cir. June 20, 2017); *see also Burge v. United States*, Civ. No. 10-0069 MV/WDS, 2012 WL 1450062, at *3 (D.N.M. Mar. 27, 2012).  The FTCA's limited grant of subject matter jurisdiction hinges on whether a private person could be subject to state law liability under similar factual circumstances as those alleged against government actors.  *Id*.; *see also United States v. Olson*, 546 U.S. 43, 44 (2005).  Overall, the FTCA intended to limit the United States' waiver of sovereign immunity to well-established torts where clear, private analogs exist under state tort law.  *Dalehite v. United States*, 346 U.S. 15, 28 (1953) ("Uppermost in the collective mind of Congress

were the ordinary common-law torts"), *partial abrogation on other grounds recognized by Rayonier, Inc. v. United States*, 352 U.S. 315 (1957).

### D. The New Mexico Wrongful Conduct Doctrine

Under New Mexico law, Plaintiffs may not maintain a cause of action that is predicated on their own illegal conduct. *Desmet v. Sublett*, 225 P.2d 141, 142 (N.M. 1950). This doctrine stems from public policy considerations, as "courts traditionally have followed a policy of closing the courthouse doors to persons seeking, through civil lawsuits, to collect debts that arise from unlawful activities." *United States v. Martinez*, 978 F. Supp. 1442, 1454 (D.N.M. 1997).

### III. UNDISPUTED FACTS

Based on the facts presented by the movants and other facts gleaned from the record, the Court finds the following facts to be undisputed for the purposes of Defendant's motion:

1. McGregor Range Complex No. 39 is a multi-purpose training range which includes a high explosive impact firing range facility located about 3.1 miles east of milepost 10 on U.S. Highway 54 in Otero County, New Mexico. *Doc. 77* at 2.

2. Specifically, Range No. 39 is a training range for aviation gunnery, forward arming and refueling operations, and counter-rocket, artillery and mortar fire. *Id.*

3. Public Law 106-65 established the McGregor Range Complex for exclusive military use, allowing the Army to close lands, roads, or trails from public use. *Doc. 82* at 7.

4. Public access to McGregor Range Complex is prohibited except for access via paved highways or on a permitted basis. *Doc. 73* at 4. No permit exists which would authorize either entry into a live fire area or the handling of military ordnance by a member of the public. *Id*.

5. The Army did not place gates, fencing or barricades around Range No. 39, and left exploded and unexploded ordnances in place. *Id*.

6. Range Safety standards and procedures on McGregor Range Complex are governed by Army Regulation 385-63 (hereinafter "AR 385-63"), the United States Department of the Army Pamphlet 385-63 (30 Jan. 2012) (hereinafter "DA Pam. 385-63"), and Fort Bliss Regulation 385-63 (hereinafter "FBR 385-63"). Range No. 39 is an UXO ("unexploded ordnance") location.

7. On October 10, 2013, Plaintiffs, domiciliaries of New Mexico and Texas, drove their truck into the high explosive impact area of McGregor Range Complex, Range No. 39. *Id.* at 4-5; *doc. 39* at 2; *doc. 77* at 2.

8. Plaintiffs entered Range No. 39 by means of Alvarado Crossing off U.S. Highway 54, drove along an unimproved dirt service road, and parked their truck after driving approximately 3 miles. *Doc 73* at 6-7; *doc. 82* at 8.

9. Plaintiffs did not have permission to enter Range No. 39 on October 10, 2013, or on any prior occasions, nor did they have permission to take, remove or sell military ordnance. *Id.; doc. 73* at 5; *doc. 77* at 17-18.

10. While on Range No. 39, Plaintiffs collected military ordnance into multiple 5 gallon buckets, as they had on twenty to thirty previous occasions for the past 15 weeks. They planned to sell the material to recycling companies. *Doc. 73* at 7-8; *doc. 77* at 17-18; *doc. 82* at 7.

11. Plaintiff Hammonds picked up an unexploded 40mm round, which exploded in his hand and injured both Plaintiffs. *Id.* at 8.

12. The following day, the Army Explosive Ordnance Disposal Unit detonated Plaintiffs' truck in place along with Plaintiffs' buckets of collected military ordnance, because the Army decided the truck was in too dangerous of a location to remove safely. *Id.*

## IV. ANALYSIS

Plaintiffs, in Count I of their First Amended Complaint, bring a negligence claim against Defendant pursuant to the FTCA. *Doc. 39* at 4-6. Particularly, Plaintiffs argue that Defendant had a duty to warn Plaintiffs of the danger posed by the prevalence of unexploded ordnance on Range No. 39, and that Defendant's breach of that duty directly and proximately caused Plaintiffs' injuries. *Id.* Defendant's Motion to Dismiss or in the Alternative for Summary Judgment seeks dismissal of Plaintiffs' claim for lack

of subject matter jurisdiction, arguing that the discretionary function exception to the FTCA's waiver of sovereign immunity applies. *Doc. 73* at 8-10, 12-25. In the alternative, Defendant seeks summary judgment, arguing that the New Mexico wrongful conduct doctrine precludes Plaintiffs from recovering for injuries arising from their own illegal activity. *Id*. at 10-11, 25-27.

Ultimately, the Court finds that, construing the evidence in the light most favorable to Plaintiffs, a reasonably jury could find that DA Pam. 385-63, applied in conjunction with AR 385-63, provides a mandatory directive with which Defendant must comply, thereby preventing dismissal based on the discretionary function exception to the FTCA. As such, the Court finds that it may properly exercise jurisdiction over Plaintiffs' claim. However, the Court finds that the New Mexico wrongful conduct doctrine bars Plaintiffs from recovering for injuries proximately caused by their own unlawful conduct. Consequently, the Court will grant Defendant's Motion for Summary Judgment.

### A. THE COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFFS' NEGLIGENCE CLAIM.

Defendant contends that the Court does not have subject matter jurisdiction over Plaintiffs' negligence claim pursuant to the FTCA, because the discretionary function exception to the FTCA's waiver of sovereign immunity protects Defendant from suit. *Doc. 73* at 11-22. *See Elder*, 312 F.3d at 1176. The discretionary function exception preserves the United States' sovereign immunity from claims based "upon the exercise

or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

As discussed above, to determine whether the discretionary function exception applies, courts engage in the two-pronged *Berkovitz* test, which asks (1) "whether the challenged conduct 'involves an element of judgment or choice,'" rather than "'a federal statute, regulation, or policy that specifically prescribes a course of action for an employee to follow'" and if so, (2) "'whether that judgment is the kind that the discretionary function exception was designed to shield[.]'" *Berkovitz*, 486 U.S. at 536. Here, Defendant argues that all relevant regulations applicable to McGregor Complex Range No. 39 provide for wide discretion in their implementation. *Doc. 73* at 12-16.

Looking to the first *Berkovitz* prong, the Court must determine if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow in which "[t]he employee has no rightful option but to adhere to the directive." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting *Berkovitz*, 486 U.S. at 536). It is Plaintiffs' burden to identify what mandatory statutes, regulations or directives have allegedly been violated with specificity. *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539-1540 (10th Cir. 1992).

Here, Plaintiffs present a number of "directives" which they claim are mandatory and are adequately specific. *See doc.* 77 at 18-22. Of those, the Court finds that one of

these directives satisfies Plaintiffs' burden at this stage of the proceedings.  Specifically,

DA Pam. 385-63 states,"Commanders will ensure UXO hazard signs are posted at a

minimum of 200m intervals around all UXO locations."  DA Pam. 385-63 Section 2-2(d).[2]

The Court finds that this regulation specifically prescribed a course of action that

Defendant's employees were required to follow, such that the employees had no

rightful option but to adhere to the directive.  *See Berkovitz*, 486 U.S. at 536.

Defendant argues that the "200m posting directive" fails to satisfy the first part

of the *Berkowitz* test, but its arguments are unpersuasive.  First, Defendant argues that

Plaintiffs' reliance on an Army pamphlet is ineffective in proving the existence of a

mandatory provision, because Army pamphlets, as opposed to regulations, are mere

guidelines, rendering all decisions based on them discretionary.  *Doc. 73* at 14.

However, as Plaintiffs note, Army Regulation 385-63 (hereinafter "AR 385-63") declares,

---

[2] The subsection provides:

> **2–2. Posting warning signs, markers, and flags**
> *a.* Warning signs should comply with Section 200, Part 1926, Title 29, Code of Federal Regulations (29 CFR 1926) . . . .  Warning signs will be posted around the installation training complex to warn and prohibit entry by unauthorized persons, and to alert authorized personnel entering a hazard area[.]
> *b.* Signs at entry points to the training complex will prohibit trespassing and removal of items under penalties provided by law. Signs will also emphasize the dangers associated with unlawful entry and handling of dud ammunition.  Where appropriate, signs will be in both English and the applicable foreign language.
> *c.* Warning signs will be placed to ensure they are visible to individuals attempting to enter training complex live-fire areas at any point around its perimeter. They will be placed at 200m intervals or less, if practicable, or in a way that will ensure that a person cannot enter the range without seeing at least one sign within a legible distance.
> *d.* Commanders will ensure UXO hazard signs are posted at a minimum of 200m intervals around all UXO locations.
>
> DA Pam. 385-63, *doc. 77-8* at 5.

"this regulation/order is to be used in conjunction with DA Pam 385-63." *See doc. 77* at 19; *doc. 77-7* at 3. Further, DA Pam. 385-63 Section 1-1 provides that the pamphlet details the "*minimum requirements* for the U.S. Army [] Range Safety Programs prescribed in AR 385-63[.]" DA Pam. 385-63 (emphasis added). *See doc. 77-8* at 3. This language demonstrates that DA Pam. 385-63, used in conjunction with AR 385-63, conveys directives, rather than guidelines.

Next, Defendant argues that, even if DA Pam. 385-63 were mandatory, it does not include sufficiently specific requirements to foreclose discretion. *Doc. 82* at 10-11. For some of the "directives" to which Plaintiff points, Defendant may be correct. However, the "200m posting directive" is specific and clear. Nonetheless, Defendant contends that the word "will" in the relevant subsection is permissive. *Doc. 86* at 3.

To interpret the meaning of subsection d, the Court begins by looking to the language of the statute. *United States v. Burkholder*, 816 F.3d 607, 614 (10th Cir. 2016) (quoting *Salazar v. Butterball, LLC*, 644 F.3d 1130, 1136 (10th Cir. 2011)). First, the Court must determine whether "the language at issue has a plain and unambiguous meaning." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341 (citing *Estate of Cowart v. Niklos Drilling Co.*, 505 U.S. 469, 477 (1992); *McCarthy v. Bronson*, 500 U.S. 136, 139 (1991)). The traditional meaning of the verb

"will" is "[h]as a duty to" or "is required to," and is the "sense that drafters typically

intend and that courts typically uphold."  Black's Law Dictionary 1499 (9th ed. 2009);

*see, e.g., Hewitt v. Helms*, 459 U.S. 460, 472 (1983) (Commonwealth "used language of an

unmistakably mandatory character, requiring that certain procedures "shall," "will," or

"must" be employed….") overruled on other grounds in *Sandin v. Connor*, 515 U.S. 472

(1995)).  Defendant points to no context which would suggest another meaning in the

relevant subsection.  In fact, the context – a DA Pam. which describes the "minimum

requirements" for U.S. Army Range Safety Programs – strengthens the Court's

conclusion that "will" establishes a mandatory requirement in subsection 2-2.

Finally, Defendant argues that DA Pam. 385-63 Section 2-2(d) does not apply to

McGregor Range because Fort Bliss Regulation 385-63 (hereinafter "FBR 385-63"), which

specifically addresses range safety on that range, does not include the "200m posting

directive."  *Doc. 73* at 14-16.  Defendant is correct that FBR 385-63 contains a subsection

very similar to DA Pam. 385-63 Section 2-2, except that it omits the subparagraph which

would be expected to contain the "200m posting directive."[3]  Plaintiff would have to

---

[3] The relevant FBR provision reads:

> **2-22 Posting warning signs and markers.**
> a. Warning signs are posted around the installation training complex to warn and prohibit entry by unauthorized persons, and to alert authorized personnel entering a hazard area.
> b. Warning signs are posted to ensure they are visible to individuals attempting to enter training complex live-fire areas at any point around its perimeter.  They will be placed at 200-meter intervals or less, or in a way that will insure that a person cannot enter the range without seeing at least one sign within a legible distance.

*Doc. 73-18* at 3.

look elsewhere for a non-discretionary duty if this omission resulted from an

intentional and authorized removal of the "200m posting directive" as applied to

McGregor Range.  However, there is insufficient evidence of this.  First, the provision in

FBR 685-63, while similar to DA Pam 385-63, para. 2-2, does not reference that superior

authority, let alone expressly overturn it.  Second, DA Pam 385-63 makes clear that

deviations to its requirements may only be granted through complex procedure.[4]  There

is no evidence that such a procedure was followed when FBR 685-63 was promulgated.

---

[4]  Section 1-4 of DA Pam. 385-63 states, in pertinent part:

> **1–4. Deviations**
> *a.* Deviations from range standards or procedures contained in AR 385–63/MCO 3570.1C and this document may be granted based on critical mission requirements.
> . . .
> *b.* At a minimum, all deviation authorizations will contain the following, as appropriate:
> (1) Statement citing chapter, paragraph, and subparagraph of the specific condition requiring deviation, and the name and number of the firing range, training facility, or maneuver area involved.
> (2) Description of the existing condition and anticipated hazards, subsequent hazard analysis, and risk analysis.
> (3) Statement as to why a deviation is necessary and impact on training if not granted.
> (4) Control measures taken to eliminate hazards and/or minimize risk and residual risk level.
> (5) Installation and unit standard operating procedures (SOPs) governing the specific firing range, training facility, or maneuver area for which the deviation applies.
> (6) Scaled topographical map depicting [surface danger zone] and requested deviation.
> (7) Map coordinates of the firing position, target location, and quadrant or elevation of fire, if required. The firing position, direction of fire, and danger zones will be plotted on the scaled map with distances shown in meters (m).
> . . .
> *c.* Requests for deviation shall originate from the unit or activity conducting the event or the installation range control officer (RCO). The installation RCO makes the initial judgment regarding the suitability of a proposed deviation prior to submission to the approving authority. Requests will be coordinated through the appropriate chain of command.  For the Army, coordination will include both garrison and mission safety offices, legal review, environmental, and public affairs offices, as appropriate.
> *d.* Deviations are valid for 1 year or less.

*Doc. 77-8* at 3.

Given the lack of evidence that the omission of the "200m posting directive" from FBR 685-63 was either intentional or authorized, the Court finds that the directive in DA Pam 385-63, para. 2-2(d) survives the promulgation of FBR 685-63.

Therefore, DA Pam. 385-63, para. 2-2(d) established a duty to post UXO hazard signs at a minimum of 200m intervals around all UXO locations, which Defendant "ha[d] no rightful option but to adhere to." *Gaubert*, 499 U.S. at 322. Based upon the summary judgment record, a reasonable jury could find that the posting of UXO hazard signs in the area and at the time in which Plaintiffs entered Range No. 39 did not comply with this standard. *See doc. 86* at 3 (Counsel concedes that Defendant has not proven that Defendant's posting of warning signs abided by the directive contained in Section 2-2(d) of DA Pam. 385-63 within McGregor Range Complex, Range No. 39 on October 10, 2013.) Moreover, based on that same record, a reasonable jury could find that the lack of such signs was a proximate cause of Plaintiffs' injury. *See Clark*, 695 F. App'x at 386 ("To circumvent the discretionary function exception, the mandatory duty alleged must be one whose breach bears a causal relationship to the Plaintiffs' injuries, thereby giving rise to their cause of action against the government."). Therefore, Plaintiff has, for the purpose of summary judgment, met its burden to avoid the discretionary function exception. Thus, the Court has subject matter jurisdiction over Plaintiffs' FTCA negligence claim, and now addresses Defendant's request for summary judgment based on the New Mexico wrongful conduct doctrine.

**B. THE NEW MEXICO WRONGFUL CONDUCT DOCTRINE BARS PLAINTIFFS' CLAIMS.**

In the alternative to the argument addressed above, Defendant seeks summary judgment on the basis that the New Mexico wrongful conduct doctrine precludes Plaintiffs from recovering. *Doc. 73* at 10-11, 25-27. The Tenth Circuit has explained the doctrine as follows:

> Under New Mexico law, a plaintiff cannot maintain a claim based on his own illegal conduct. "It is a well settled rule of law that a person cannot maintain an action if, in order to establish his cause of action, he must rely, in whole or in part, on an illegal or immoral act or transaction to which he is a party, or where he must base his cause of action, in whole or in a part, on a violation by himself of the criminal or penal laws." The principle of public policy behind this rule is that "[n]o court will lend its aid to a man who founds his cause of action upon an immoral or illegal act."

*Romero v. United States*, 658 F. App'x 376, 379 (10th Cir. 2016) (unpublished) (quoting *Desmet v. Sublett*, 225 P.2d 141, 142 (N.M. 1950)). To be barred by the wrongful conduct rule, "the plaintiff's conduct must be prohibited or almost entirely prohibited under a penal or criminal statute [and] a sufficient causal nexus must exist between the plaintiff's illegal conduct and the plaintiff's asserted damage." *Inge v. McClelland*, 257 F. Supp. 3d 1158 (D.N.M. Jun. 26, 2017), *aff'd*, __ F. App'x __, 2018 WL 985740 (10th Cir. Feb. 20, 2018) (quotations and citations omitted). Moreover, while "the wrongful conduct rule forecloses recovery by the plaintiff even where the defendant has participated equally in the illegal activity, … the defendant's culpability must not be

greater than the plaintiff's culpability for the injuries." *Id*. (quotations and citations omitted).

Here, Defendant seeks to apply the doctrine to bar Plaintiffs' claims, because Plaintiffs were stealing government property in violation of 18 U.S.C. § 641 at the time of injury.[5] In fact, Plaintiffs had stolen from Defendant repeatedly. They admit they had been to the range between twenty and thirty times for the 15 weeks preceding October 10, 2013 in order to collect "scrap metal" to later sell at recycling centers. *Doc. 73* at 5; *doc. 77* at 17-18; *doc. 82* at 7.

As an initial matter, Plaintiffs contend that the evidence does not clearly establish that Plaintiffs committed theft, because, first, Plaintiffs thought the ordnance they collected were abandoned and, second, they had no intent to steal from the government. *Doc. 86* at 4; *see also doc. 77* at 17-18. Plaintiffs' argument fails. First, the ordnance was not abandoned. Rather, McGregor Range Complex has a policy in which a range contractor collects and recycles the ordnances at certain intervals to ensure safe handling, and the range is reimbursed for those materials. *Doc. 73-1* at 30. Thus, in

_____

[5] 18 U.S.C. § 641 states:

> Whoever embezzles, steals, purloins, or knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any record, voucher, money, or thing of value of the United States or of any department or agency thereof, or any property made or being made under contract for the United States or any department or agency thereof; or
> Whoever receives, conceals, or retains the same with intent to convert it to his use or gain, knowing it to have been embezzled, stolen, purloined or converted--
> Shall be fined under this title or imprisoned not more than ten years, or both[.]

removing the ordnances from the range, Plaintiffs deprived Defendant of its recycling reimbursements. Second, intent is not an element of the crime of theft under 18 U.S.C. § 641. *United States v. Speir*, 564 F.2d 934, 937-38 (10th Cir. 1977). Rather, convicting a defendant of larceny merely requires the taking and carrying away of another's property by the defendant, with the knowledge that the property does not belong to him. *Id.* at 938; *see also Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013). In other words, Plaintiffs' knowledge that the ordnance belonged to the government, or their knowledge of any other jurisdictional fact such as whether the ordnance was of value, would not be required to convict them of an 18 U.S.C. § 641 violation. *Speir*, 564 U.S. at 938.

Plaintiffs have admitted that they were on government property without permission. *Doc. 73* at 5; *doc. 77* at 17-18; *doc. 73-3* at 8-9, Hammonds Dep. 38:8-39:8, 49:3-14. That property is scarred by projectiles, and the land is scattered with damaged tanks. *Doc. 73-1* at 4, Anderson Dep. 34:24-35:14. It is undisputed that, regardless of Plaintiff's alleged subjective beliefs, every item on the property belonged to the government. Moreover, there can be no reasonable dispute that the ordnance did not belong to Plaintiffs. As such, the Court concludes that Plaintiffs were engaging in the theft of government property from the Range No. 39, in violation of 18 U.S.C. § 641, at the time of the injury.

 Having established that Plaintiffs' conduct was prohibited by a criminal statute,

the Court must determine if a sufficient causal nexus exists between the plaintiffs'

illegal conduct and their asserted damage.  For their part, Plaintiffs do not meaningfully

contest this point.  It is undeniable that Plaintiffs' injuries would not have occurred but

for their own wrongful conduct, which they set in motion.  Specifically, Plaintiffs

suffered injury the moment Plaintiff Hammonds attempted to steal an unexploded

ordnance, which burst in his hand.  Overall, Plaintiffs' criminal violations constitute "an

integral and essential part of [their] case." *Romero*, 658 F. App'x at 380.  Their theft of

government property was the "but-for" cause of their injuries.

Finally, the Court must consider the relative culpability of the parties.  Again,

Plaintiffs do not meaningfully contest this element.  Plaintiffs allege only negligent

inaction on the part of Defendant—specifically, they allege that their injuries were

caused by Defendant's failure to place signs to adequately warn trespassers of the

dangers of the property upon which they are about to trespass.  In contrast, Plaintiffs'

conduct was intentional and criminal.  Undoubtedly, Defendant's alleged culpability

was not greater than Plaintiffs' culpability for their injuries. *See, e.g., Romero*, 658 F.

App'x at 378-79 (defendant's culpability not greater than plaintiff's where it was alleged

that defendant actively induced plaintiff to accept and use crack cocaine); *Inge*, 257 F.

Supp. 3d at 1161-62 (defendant's culpability not greater than plaintiff's where it was

alleged that defendant knowingly filled plaintiff's fraudulent opioid prescriptions).

In short, every element of the wrongful conduct doctrine is met in this case.

Thus, if it applies, Plaintiffs' claims must be dismissed. Plaintiffs advance two arguments as to why the doctrine should not apply. First, Plaintiffs contend that the doctrine applies only in those cases in which a party seeks to recover profits owed from performance of an illicit act, rather than to seek relief from injuries caused by unlawful activity. *Doc. 77* at 23. However, this argument is directly contradicted by the two recent applications of the doctrine by the Tenth Circuit. *See Romero*, 658 F. App'x at 379-80; *Inge v. McClelland*, __ F. App'x __, 2018 WL 985740 (10th Cir. Feb. 20, 2018). In *Romero*, the plaintiff brought an FTCA action against the federal government, alleging that the Drug Enforcement Administration caused him to relapse into crack cocaine addiction when one of its confidential informants persuaded plaintiff to arrange a drug deal in exchange for a large amount of crack. 658 F. App'x at 378-79. The *Romero* plaintiff was not seeking profits but damages. Nonetheless, the Tenth Circuit affirmed the district court's determination that Plaintiff's negligence and emotional distress claims were barred by the wrongful conduct doctrine, because "Mr. Romero's illegal use of crack cocaine was an integral and essential part of his case. He cannot dispute that this conduct was a proximate cause of his asserted injuries." *Id.* at 380.

Similarly, in *Inge*, the plaintiffs brought an action against a pharmacist for the injuries they suffered—including addiction, loss of employment, loss of custody of children, and overdose—as a result of the pharmacist's decision to fill their fraudulent prescriptions. 257 F. Supp. 3d at 1161-62. Again, the plaintiffs sought not to recover

profits but damages. Yet, the Tenth Circuit affirmed the district court's dismissal of the claims based upon the wrongful conduct doctrine. *Inge*, 2018 WL 985740 at *2-*3. Together, these two cases clearly establish that the New Mexico wrongful conduct doctrine applies to bar recovery from injury caused by a plaintiff's unlawful conduct as much as it applies to bar the recovery of profits derived from a plaintiff's illicit action.

Plaintiffs next assert that the wrongful conduct doctrine should not be applied to bar their claim because it is incompatible with New Mexico's comparative fault framework. *Doc. 86* at 3-4. Particularly, Plaintiffs cite to the New Mexico Court of Appeals opinion in *Rodriguez v. Williams*, 355 P.3d 25 (N.M. Ct. App. 2015). To be sure, the Court of Appeals did not renounce New Mexico's wrongful conduct doctrine. *Id*. at 27-29. The *Rodriguez* court held only the plaintiff, an intoxicated driver, was able to recover for injuries suffered when his car collided with another driver who ran a red light. *Id*. Less than a month ago, the Tenth Circuit Court of Appeals rejected the argument that *Rodriguez* stood for the broad proposition that barring claims based on the wrongful conduct doctrine was incompatible with New Mexico's comparative fault approach. *Inge*, 2018 WL 985740 at *3. The *Inge* court explained that the holding in *Rodriguez* was a narrow one because the injured driver's ability to recover was limited to damages based solely on the other driver's negligence. *Id*. Here, as in *Inge*, the Plaintiffs' "injuries do not stem solely from Defendants' conduct." *Id*. "Accordingly, [Plaintiffs] have not shown that application of the wrongful-conduct doctrine is

precluded by the New Mexico's comparative-fault framework."  *Id.*

Because the New Mexico wrongful conduct doctrine is applicable, Plaintiffs would be prohibited from recovering from a private person under similar factual circumstances as those alleged against Defendant.  As such, Plaintiffs' claim falls outside the United States' waiver of sovereign immunity based on the FTCA.  *See Olson*, 546 U.S. at 44.  Therefore, their claim must be dismissed.

**V.    CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (*doc. 73*) is GRANTED.  Plaintiffs' action is hereby DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED**.

_____
GREGORY B. WORMUTH
United States Magistrate Judge
**Presiding by Consent**